Damion D. D. Robinson (Cal Bar No. 262573)
**AFFELD GRIVAKES LLP**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone:  (310) 979-8700
Facsimile:  (310) 979-8701
dr@agzlaw.com

Attorneys for
JACQUELYNN G. PERSKE

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re:

JENS LARSEN,

                                    Debtor.

**Case No. 2:16-BK-18600-RK**

*Assigned to*:
The Honorable Robert Kwan

**CREDITOR JACQUELYNN G. PERSKE'S NOTICE OF OBJECTION AND OBJECTION TO EXEMPTIONS LISTED ON DEBTOR JENS LARSEN'S AMENDED SCHEDULE C [Dkt. No. 51]; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF DAMION ROBINSON IN SUPPORT**

**TO THE COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, THE CHAPTER 7 TRUSTEE, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Creditor Jacquelynn G. Perske ("**Creditor**") hereby objects to Amended Schedule C to debtor Jens Larsen's ("**Debtor**") Chapter 7 Petition (Dkt. No. 51), and any exemptions claimed therein.

This objection is based on this Notice of Objection and Objection, the attached Memorandum of Points and Authorities and Declaration of Damion Robinson, the records and files in this matter and in Creditor's related adversary proceeding, and such other matters as the Court may consider.

It is made on the following grounds:

1.    The Debtor has admitted that the horses identified as exempt or partially exempt assets do not belong to him.  They do not constitute estate property, and, thus, cannot be subject to exemption.

2.    Debtor has waived any claim of exemption by failing to timely file the exemptions.  The claimed exemptions are California state-law exemptions, and are subject to California defenses.  *In re Lua*, 529 B.R. 766, 775 (Bankr. C.D. Cal. 2015), *rev'd on other grounds in* __ F. App'x __, 2017 WL 2799989 (9th Cir. 2017).  California law has long recognized waiver as a basis to deny exemptions.  *Hing v. Lee*, 37 Cal. App. 313, 318 (1918) ("Though exemption is a personal privilege, which the judgment debtor may waive if he choose . . . either in express words or by overt act, or by waiting more than a reasonable time before attempting to claim it.")

3.    California's exemption for "household goods" does not apply to thoroughbred racehorses held for business or investment purposes.  *See* Cal. Civ. Proc. Code § 703.140(b)(3) (allowing exemption for household pets, "held primarily for the personal, family, or household use of the debtor or a dependent."); *see also, e.g., In re Gallegos*, 226 B.R. 111, 112 (Bankr. D. Idaho 1998) ("Any attempt to abuse the exemption, *such as claiming a thoroughbred race horse as a pet*, is bridled not only by the 'personal use' requirement of the statute, but also by the $500 per item limitation.") (emphasis added); *In re Cass*, 104 B.R. 382, 385 (N.D. Okla. 1989).

4.    Debtor has failed to adequately identify the "Furniture and Appliances" and "Misc Electronics" claimed as exempt.  Fed. R. Bankr. P. 4003(a); *In re Clark*, 266 B.R. 163, 168 (9th Cir. BAP 2001) (quoting *Hyman v. Plotnik (In re Hyman)*, 967 F.3d 1316, 1319 n.6 (9th Cir. 1992), also citing *Seror v. Kahan (In re Kahan)*, 28 F.3d 79, 82 (9th Cir. 1994).

Dated:  September 20, 2017                    Respectfully submitted,

                                             /s/ Damion D. D. Robinson
                                             _____

                                             Damion D. D. Robinson
                                             Affeld Grivakes LLP

### MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

This case has been pending for more than a year.  Initially, debtor Jens Larsen ("**Debtor**") filed schedules identifying no personal property, and claiming no exemptions.  He also admitted at his section 341(a) meeting and in his deposition that the racehorses he claims as his assets do not belong to him, but to a handful of limited liability companies that are not parties to this case.

Now, however, Debtor has filed an Amended Schedule C, claiming exemption for personal property assets that he initially claimed he did not have, and for racehorses that are not estate property to begin with.  His claimed exemptions fail because (a) he cannot exempt property that does not belong to the estate, (b) the state-law exemptions that Debtor asserts do not apply to the types of property that Debtor seeks to exempt, (c) he has waived any claim of exemption by failing to timely assert the exemption and by concealing his assets, and (d) he has still failed to properly identify the property he claims is exempt.

## II.    FACTS AND PROCEDURAL HISTORY

Debtor filed this case in June 2016 in response to a state-court lawsuit by creditor Jacquelynn Perske ("**Creditor**").  (*See generally* Petition, Schedules and Statement of Financial Affairs [Dkt. No. 1].)

In his original schedules, Debtor listed as his only assets eight racehorses, identified as farm animals rather than household pets.  (*Id.* at pp. 13, 17 (Schedule A/B, Part 3, item 13, and Part 6, item 47).)   He did not schedule *any* personal property.  (*Id.* at pp. 13-14 (Schedule A/B, Part 3).)

In his Schedule C, Debtor checked the box for claiming state and federal nonbankruptcy exemptions, but did not list any.  (*Id.* at p. 19 (Schedule C, Part 1).)

At his section 341(a) meeting on August 26, 2016, Debtor admitted that he did not own the racehorses listed in his schedules, and that they belong to one or more non-bankrupt LLCs:

> Q.    Which LLC was it that owned the horses?
> A.    Jens Frederick Larsen and Larsen Investment.
> Q.    And that was all the horses that are listed in the schedules?
> A.    That's correct.
> Q.    And I supposed at the end of those LLCs, you transferred the horses to yourself personally?
> **A.    I do not own any of the horses?**

*Q.*     *You don't own any of the horses?*
*A.*     *No, I do not.*
The Trustee:    Who owns the horses?
Debtor:          They were in a corporation.
The Trustee:    Why are they listed in your bankruptcy schedules?
Debtor:          They're just assets that – so I turned them over to – the papers.

(Declaration of Damion Robinson ("Robinson Decl."), Ex. A at 10:24-13:16.)    Debtor also

confirmed at his deposition that all of the horses belong to one or more of the LLCs, and not Debtor

personally.  (Robinson Decl., Ex. B. at 65:1-6 ("Were the horses owned by you, or were they

owned by business entities?  A.  Entities."); *id.* at 67-11:17, 68:8-11, 68:21-69:1.)

Debtor purported caused two of his LLCs organized in California to be dissolved in July

2016 by filing Certificates of Cancellation and Dissolution with the California Secretary of State.

(Robinson Decl., Exs. C, D.)  The third, organized in Arizona, remains an active business entity in

good standing.  (Robinson Decl., Ex. E.)

On September 15, 2016, Debtor amended his schedules, but did not change his listing of the

horses or his claimed exemptions.  (Dkt. Nos. 11, 12.)  Creditor objected to Defendant's

exemptions in May 2017.  (Dkt. No. 48.)

When asked about his failure to disclose personal property in his schedules at his March 31,

2017 deposition, Debtor admitted that his schedules were "obviously" inaccurate.  (Robinson Decl.,

Ex. B at 111:14-24.)  He claimed that, prior to the deposition, he had never seen his Petition,

Schedules, or Statement of Financial Affairs.  (*Id.* at 35:16-36:3.)

Debtor still did not amend his schedules.

On July 18, 2017, Creditor filed a Motion for Partial Summary Judgment in her adversary

proceeding, seeking denial of discharge under section 727 of the Bankruptcy Code because Debtor

made numerous false statements in his schedules, knowingly and fraudulently.  (*Perske v. Larsen*,

Case No. 2:16-ap-01446-RK [Dkt. No. 59].)  Debtor opposed the motion on August 8, and

Creditor filed a reply on August 15.  (*Id.* Dkt. Nos. 81, 88.)

On August 21, 2017, 14 months into this case, Debtor amended his schedules, listing

personal property assets for the first time, identified only as "Furniture and Appliances," "Misc

Electronics" and "Clothing." (Dkt. 51 at pp. 16-17 (Schedule A/B, Part 3).  The amended Schedule

A/B, again lists the racehorses, as well as additional foals, as farm animals and not household pets.

1  (*Id.* at pp. 13, 21-22 (Schedule A/B, Part 3, item 13 and Part 6, item 47).

2      The amended Schedule C also now asserts a host of state-law exemptions for the first time

3  as to both the personal property and the horses.  (*Id.* at pp. 24-25 (Schedule C).)

4  **III.   ARGUMENT**

5      **A.   <u>The Horses Belong to Non-Bankrupt LLCs, and Are Not Estate Assets.</u>**

6      Section 522(b)(1) allows a debtor to "exempt" certain assets "from property of the estate."

7  11 U.S.C. § 522(b)(1).  In order to be exempted, the assets must necessarily be estate assets.

8  "[O]bviously . . . an interest that is not possessed by the estate cannot be exempted." *Owen v.*

9  *Owen*, 500 U.S. 305, 308-09 (1991).

10      Estate assets are "all legal and equitable interests *of the debtor* as of the commencement of

11  the case." 11 U.S.C. § 541(a)(1) (emphasis added).  Whether the debtor has a legal or equitable

12  interest in property at the commencement of a case is determined by reference to state law.  *In re*

13  *Harrell*, 73 F.3d 218, 219 (9th Cir. 1996).

14      As Debtor has admitted, the racehorses he lists as assets and claims to be exempt do not

15  belong to him, but to one or more non-bankrupt LLCs.  As a matter of California and Arizona law,

16  the horses are not Debtor's property or estate property, but the property of those LLCs. "A limited

17  liability company is an entity distinct from its members."  Cal. Corp. Code § 17701.04.  LLCs have

18  the power to hold assets in their own names, Cal. Corp. Code § 17701.04(i), Ariz. Rev. State § 29-

19  610(A)(2).  Assets of an LLC belong to the LLC, and "members of the LLC hold no direct

20  ownership interest in the company's assets."  *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90

21  Cal. App. 4th 958, 964 (2001).

22      The fact that Debtor has dissolved his two California LLCs does not change matters.  Under

23  California law, a dissolved LLC continues to exist for purposes of "disposing of and conveying its

24  property, and collecting and dividing its assets" for payment to creditors in compliance with the

25  Corporations Code.  Cal. Corp. Code § 17707.06(a).  Assets that are omitted from the winding up

26  "continue in the dissolved limited liability company for the benefit of the persons entitled thereto,"

27  including creditors.  Cal. Corp. Code § 17707.06(c).

28      Dissolution of an LLC does not automatically transfer assets to the members.  Instead, in

order to properly wind up an LLC, the managers or members must give written notice to all

creditors, which Debtor failed to do.  Cal. Corp. Code § 17707.04(a).  Before distributing any

assets to members, the manager must "determin[e] that all the known debts and liabilities of [the]

limited liability company . . . have been paid or adequately provided for."  Cal. Corp. Code §

17707.05(a).  Debtor did not give written notice of the dissolution to creditors, did not make

provision for claims of creditors of the LLCs, including Creditor, and did not wind up the LLCs.[1]

(Robinson Decl., Ex. B at 69:13-23, 91:7-9, 92:22-24.)

As Debtor admits, to dissolve the LLCs, he simply "filed paperwork" with the California

Secretary of State, and allegedly published notice in the newspaper, although he has no records of

doing so.  (Robinson Decl., Ex. A at 11:5-15.)  Because Debtor has not collected, divided, or

liquidated the assets of those LLCs – *i.e.*, the racehorses – or wound them up, the assets remain

property of the LLCs.  Any purported distribution of assets to Debtor without complying with the

Corporations Code would be void *ab initio*, and would result in a constructive trust for the benefit

of creditors.  Cal. Civ. Code § 3439.05, *see also* Cal. Civ. Code §§ 2223, 2224.  In no case would

the dissolution result in a transfer of LLC assets to Debtor, as a member of those LLCs, without

provision for creditors.

Further, Debtor's Arizona LLC, Jens Frederick Larsen, LLC, remains an active entity.

There is no basis to claim that the assets of that still-active entity somehow transferred to Debtor's

estate.

**B.**     **Racehorses Held for Investment Are Not Exempt Household Pets.**

Debtor has claimed California's "household property" exemption for all of the racehorses

owned by his LLCs.  That exemption applies to "household furnishings, household goods, wearing

apparel, appliances, books, animals, crops, or musical instruments, *that are held primarily for*

*personal, family, or household use*."  Cal. Civ. Proc. Code § 703.140(b)(3).  The few courts to

consider the issue have found racehorses and horses owned for breeding or investment do not to

---

[1] Further, the dissolution was not effective in any event.  A certificate of cancellation is only
effective if the limited liability company "does not have any debts or other liabilities," and has
done no business, neither of which is true in this case.  Cal. Corp. Code § 17350.5(a)(3).

1  qualify as "household" animals for purposes of similar state-law exemptions.  *See, e.g.*, *In re*

2  *Gallegos*, 226 B.R. 111, 112 (Bankr. D. Idaho 1998) ("Any attempt to abuse the exemption, *such*

3  *as claiming a thoroughbred race horse as a pet*, is bridled not only by the "personal use"

4  requirement of the statute, but also by the $500 per item limitation.") (emphasis added); *In re Cass*,

5  104 B.R. 382, 385 (N.D. Okla. 1989) (finding that breeding studs owned by horse breeders were

6  not within exemption for personal property).  Nor does California law exempt livestock as do some

7  other state exemptions to the extent that racehorses could even qualify.

8       Here, Debtor has repeatedly admitted that the horses—in addition to not being his

9  property—are business property, not household property.  He admits that he is in the business or

10  buying, breeding, and selling horses.  (Robinson Decl., Ex. A at 6:15-16 ("What kind of business

11  have you been engaged in during the past year?  Debtor:  "I own racehorses."); Robinson Decl., Ex.

12  B. at 13:4-19, 14:1-13.)  In his schedules, he continues to list the horses as "farm animals" rather

13  than personal pets.  The horses are business assets, not household property.

14       **C.**    **Debtor Has Waived His Claim of Exemptions.**

15       Where a debtor claims state-law exemptions, they are subject to state-law defenses.  *In re*

16  *Lua*, 529 B.R. 766, 775 (Bankr. C.D. Cal. 2015), *rev'd on other grounds in __* F. App'x __, 2017

17  WL 2799989 (9th Cir. 2017).   Grounds under state law to reject a claim of exemption are also

18  available where the debtor raises the exemption in Bankruptcy Court.  *Id.*

19       California law has long recognized waiver as a defense to the assertion of exemptions.

20  "Exemptions from execution are privileges which a judgment debtor may waive expressly or by

21  action."  *In re Marriage of Thompson*, 96 Cal. App. 3d 621, 625 (1979).  A debtor may waive

22  exemptions "either in express words or by overt act, or by waiting more than a reasonable time

23  before attempting to claim it."  *Hing v. Lee*, 37 Cal. App. 313, 318 (1981); *see also Boot v Boyd*, 37

24  Cal. App. 545, 554-55 (1918) (finding waiver due to delay where debtor waits a month after notice

25  of seizure to claim that property is exempt).

26       Debtor has waived any claim to exemptions by engaging in unreasonable delay and bad

27  faith conduct.  Not only did Debtor wait until more than a year into this proceeding to claim

28  exemptions, but he now seeks to exempt assets that he previously claimed he did not have.  As the

1  Court is aware from Creditor's Motion for Summary Judgment, Debtor continued to delay

2  disclosure—and repeatedly misrepresented his assets and liabilities—even after Creditor took his

3  deposition and moved for summary judgment denying his discharge.   He has no plausible

4  explanation for this delay of over a year.

5      In the process, he has engaged in a host of bad faith conduct designed to conceal his

6  finances from creditors.  This has included falsely averring that he had read and understood his

7  schedules when he had never even seen them, continuing to make false statements in discovery,

8  and disregarding a Court order to disclose his bank accounts.  A debtor cannot flout his obligations

9  for months, only to claim the privilege of exemption at the eleventh hour.

10      **D.**      **Debtor Has Not Properly Raised Exemptions to Personal Property**.

11      As set forth in Creditor's previous objection, Federal Rule of Bankruptcy Procedure

12  4003(a) requires the debtor to specifically identify any property subject to a claimed exemption.

13  "[A] debtor controls the schedules and bears the burden of enabling trustees and creditors 'to

14  determine precisely whether a listed asset is validly exempt simply by reading a debtor's

15  schedules.'" *In re Clark*, 266 B.R. 163, 168 (9th Cir. BAP 2001) (quoting *Hyman v. Plotnik (In re*

16  *Hyman)*, 967 F.3d 1316, 1319 n.6 (9th Cir. 1992), also citing *Seror v. Kahan (In re Kahan)*, 28

17  F.3d 79, 82 (9th Cir. 1994).  A non-specific exemption, which fails to identify the property at issue

18  or the basis "is without legal effect." *In re Andermahr*, 30 B.R. 532, 533 (9th Cir. BAP 1983).

19      Despite the extensive delay, and Creditor's prior objection, Debtor has still failed to

20  properly identify the personal property items that he claims are exempt. He identifies the property

21  only as, "Furniture and Appliances," "Misc Electronics" and "Clothing." (Dkt. 51 at pp. 16-17

22  (Schedule A/B, Part 3).[2]  This is not sufficient to allow his creditors to identify the actual property

23  involved, much less determine whether it is properly exempt.  As a result, the cursory objection "is

24  without legal effect."

25  //

26  **III.      CONCLUSION**

---

27  [2] Puzzlingly, at his deposition, Debtor testified "I have no furniture," although he now seeks to
exempt furniture.  (Robinson Decl., Ex. B. at 111:25-112:1.)

28

1    Because Debtor has (a) attempted to exempt property that is not property of the estate, (b)

2    relied on inapplicable exemptions, (c) waived his exemptions due to unreasonable delay, and (d)

3    failed to properly assert his claimed exemptions, the exemptions should be rejected.

4    Dated:  September 20, 2017                Respectfully submitted,

5

6                                                  /s/ Damion D. D. Robinson
                                                 Damion D. D. Robinson
7                                                Affeld Grivakes LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION

I, Damion Robinson, declare and state as follows:

1.       I am counsel of record to creditor Jacquelynn Perske in this matter and have personal knowledge of the facts herein.

2.       Attached hereto as **Exhibit A** is a true and correct copy of a transcript of Debtor's August 26, 2017 meeting of creditors pursuant to section 341(a) of the Bankruptcy Code.

3.       Attached hereto as **Exhibit B** is a true and correct copy of the transcript of the first session of Debtor's deposition taken March 31, 2017.

4.       Attached hereto as **Exhibit C** is a true and correct copy of a Certificate of Cancellation and Certificate of Dissolution of Larsen Investment Group LLC, a California limited liability company, produced by Debtor in discovery.

5.       Attached hereto as **Exhibit D** is a true and correct copy of a Certificate of Cancellation and Certificate of Dissolution of Frederick Investments LLC, a California limited liability company, produced by Debtor in discovery.

6.       Attached hereto as **Exhibit E** is a Certificate of Good Standing from the Arizona Corporation Commission for Jens Frederick Larsen LLC, an Arizona limited liability company, dated June 12, 2017.  I retrieved this document from the Arizona Corporation Commission website on that date.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of September, 2017 at Los Angeles, California.

/s/  Damion Robinson
Damion Robinson

OBJECTION TO EXEMPTIONS

**Exhibit A**

1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                         LOS ANGELES DIVISION

4

5    In Re:                          )
                                     )
6    JENS F. LARSEN, an individual,  ) Case No. 2:16
                                     ) bk-18600-RK
7             Debtor,                )
     _____)
8    JACQUELYNN PERSKE,              )
                                     )
9             Plaintiff             )
                                     )
10               v.                  )
                                     )
11   JENS F. LARSEN, an individual,  )
                                     )
12            Defendant.             )
     _____)
13

14

15         REPORTER'S AUDIO TRANSCRIPTION OF PROCEEDINGS

16            TRUSTEE'S MEETING OF CREDITORS

17

18        MEETING HELD ON AUGUST 26, 2016; 11:00 A.M.

19        915 WILSHIRE BOULEVARD, 10TH FLOOR, ROOM 2

20                  LOS ANGELES, CALIFORNIA

21

22         MEETING TRANSCRIBED ON JUNE 6, 2017

23            BY ARIELA PASTEL, CSR 13167

24

25

1   TRUSTEE EDWARD WOLKOWITZ

2

3   APPEARANCES OF COUNSEL:

4

5   FOR THE CREDITOR JACQUELYNN PERSKE:

6        VAN VLECK ZALLER & ROBINSON, LLP
         BY:  DAMION D.D. ROBINSON, ESQ.
7        6310 San Vicente Boulevard
         Suite 430
8        Los Angeles, California 90048
         310.592.3505
9        Drobinson@vtzlaw.com

10

11   FOR THE DEBTOR:

12        LAW OFFICE OF STEVEN L. KIMMEL
          BY:  STEVEN L. KIMMEL, ESQ.
13        6333 Van Nuys Boulevard
          Van Nuys, California  91401-2611
14        818.888.8333
          info@legalexpertsla.com

15

16

17

18

19

20

21

22

23

24

25

```
1                            I N D E X

2

3    EXAMINATION BY:                                    PAGE:

4    MR. ROBINSON                                        10

5

6

7

8                      INFORMATION REQUESTED

9                         PAGE:    LINE:

10                          8        9

11                          9        2

12                         13       10

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              LOS ANGELES, CALIFORNIA, FRIDAY

2                   AUGUST 26, 2016

3

4         THE TRUSTEE:  Okay.  Calling the matter of

5  "Jens Larsen" followed by -- (inaudible.)  I'm going to

6  need an appearance for the record.  One of you is

7  representing this man.

8         MR. ROBINSON:  That would be him.

9         MR. KIMMEL:  Steve Kimmel, for the debtor,

10 Jens Larsen.

11        THE TRUSTEE:  Thank you.

12

13                   Jens Larsen,

14          called as a debtor and sworn in by

15               the trustee, was examined

16               and testified as follows:

17

18        THE TRUSTEE:  Please raise your right hand.

19 Do you solemnly swear or affirm the testimony you will

20 give will be the truth, the whole truth, and nothing

21 but the truth?

22        THE DEBTOR:  I do.

23        THE TRUSTEE:  You may put your hand down.  Do

24 you understand the contents of the green bankruptcy

25 information form?
```

```
1              THE DEBTOR:  Yes, I do.

2              THE TRUSTEE:  Is the social security number

3    you submitted with your bankruptcy papers your correct

4    social security number?

5              THE DEBTOR:  Yes, it is.

6              THE TRUSTEE:  Have you ever used a different

7    social security number?

8              THE DEBTOR:  No, I have not.

9              THE TRUSTEE:  Have you used any different

10   names in the last eight years?

11             THE DEBTOR:  Yes, I have.

12             THE TRUSTEE:  Are these names that you have

13   not listed in your petition or any names other than

14   Jason Reingold?

15             THE DEBTOR:  No.  That's the only one.

16             THE TRUSTEE:  Okay.  Have you listed in your

17   bankruptcy papers your correct residence address in

18   Burbank?

19             THE DEBTOR:  Yes, I did.

20             THE TRUSTEE:  How long have you lived there?

21             THE DEBTOR:  Seven months.

22             THE TRUSTEE:  How long have you lived

23   continuously in the state of California?

24             THE DEBTOR:  Four years.  Four years.

25             THE TRUSTEE:  Okay.  And how long have you
```

```
 1    been divorced?

 2              THE DEBTOR:  Six years.

 3              THE TRUSTEE:  Do you have any prior

 4    bankruptcies?

 5              THE DEBTOR:  No, I do not.

 6              THE TRUSTEE:  Did you read the papers for the

 7    bankruptcy carefully before you signed them?

 8              THE DEBTOR:  Yes, I did.

 9              THE TRUSTEE:  Are they true, correct, and

10    complete?

11              THE DEBTOR:  Yes.

12              THE TRUSTEE:  Is all of the information on the

13    questionnaire that you filled out and signed correct?

14              THE DEBTOR:  Yes.

15              THE TRUSTEE:  What kind of business have you

16    been engaged in during the past year?

17              THE DEBTOR:  I own racehorses.

18              THE TRUSTEE:  Do you race them?

19              THE DEBTOR:  Yes.  I was.  Not currently, but

20    yes, I was.

21              THE TRUSTEE:  And you have six racehorses?

22              THE DEBTOR:  Yes.  There's a few more, but

23    there's no -- I surrendered my papers and everything to

24    you, but the babies are attached to the mares, so they

25    would come as a package.
```

1          THE TRUSTEE:  Right.  Okay.  And these six,

2    they're located where?

3          THE DEBTOR:  In Santa Ynez.

4          THE TRUSTEE:  Okay.  And are there agister's

5    liens on these horses?

6          THE DEBTOR:  Liens?

7          THE TRUSTEE:  Yeah.

8          THE DEBTOR:  Not that I'm aware of.

9          THE TRUSTEE:  The folks or the stable that's

10   boarding them, are they fully paid?

11         THE DEBTOR:  No, they are not.

12         THE TRUSTEE:  Okay.  And how did you arrive at

13   the values for these horses?

14         THE DEBTOR:  Just the going value of what a

15   mare is for.

16         THE TRUSTEE:  Have you ever tried to sell any

17   of them?

18         THE DEBTOR:  I tried prior to the bankruptcy,

19   yes, but with no success.

20         THE TRUSTEE:  I see.  Okay.  And these horses

21   have raced in the past?

22         THE DEBTOR:  Yes.  One was never a

23   racehorse.  She was bred to be a broodmare.

24         THE TRUSTEE:  I see.  Okay.  I have a copy of

25   your 2015 Federal Income Tax Return.  Is this a correct

```
1    copy of the document that you filed with the IRS?

2            THE DEBTOR:  Yes, it is.

3            THE TRUSTEE:  How do I get in contact -- I

4    need contact information for the stables where the

5    horses are located.

6            Do you know anything about that?

7            MR. ROBINSON.  No.  I'm here for a different

8    creditor.

9            THE TRUSTEE:  You're here for a different

10   creditor.  Could you provide me with that contact

11   information, please, not now, but in the next day or

12   so?

13           MR. KIMMEL:  He -- say it again.  I'm sorry.

14           THE TRUSTEE:  Contact information for the

15   stables where the horses are.

16           MR. KIMMEL:  Was that turned in to our office?

17           THE DEBTOR:  Yes, it was.

18           MR. KIMMEL:  Okay.  We'll provide that to you.

19           THE TRUSTEE:  Okay.  You have the name.  I

20   just don't have a phone number.

21           Is there a contact person?

22           THE DEBTOR:  Which --

23           THE TRUSTEE:  This is Tommy Town

24   Thoroughbreds.

25           THE DEBTOR:  Yeah.  There's Tommy Town
```

```
 1    Thoroughbreds and also J&M Thoroughbreds.

 2             THE TRUSTEE:  You haven't listed J&M.  I need

 3    all that information --

 4             THE DEBTOR:  They're connected.

 5             THE TRUSTEE:  -- for the contact people.

 6             THE DEBTOR:  Okay.

 7             THE TRUSTEE:  I have a copy of your 2015

 8    Federal Income Tax Return.  Is this a correct copy of

 9    what you filed with the IRS?

10             THE DEBTOR:  Yes, it is.

11             THE TRUSTEE:  All right.  We're going to hold

12    on to this in order to determine whether or not there's

13    anything to administer here.

14             I am going to return to you your slightly

15    ragged social security card and California driver's

16    license.

17             Are you supporting anyone who is not living

18    with you?

19             THE DEBTOR:  No, I'm not.

20             THE TRUSTEE:  And you're not currently

21    employed; is that right?

22             THE DEBTOR:  Correct.

23             THE TRUSTEE:  All right.  If you would

24    identify yourself, please.

25             MR. ROBINSON:  Sure.  I'm Damion Robinson on
```

1    behalf of Jacquelynn Perske.

2              THE TRUSTEE:  Okay.  Mr. Robinson.

3

4                         EXAMINATION

5    BY MR. ROBINSON:

6         Q     Mr. Larsen, just a few questions for you this

7    morning.  In 2015, did you own or possess any vehicles?

8         A     No, I did not.

9         Q     At any point in time did you possess a

10   Cadillac, 2015 Cadillac?

11        A     That was a rental.

12        Q     And how long did you rent that?

13        A     For 30 days.

14        Q     And did the rental company allow you to tint

15   the windows of the Cadillac?

16        A     Yes, they did.

17        Q     And at some point in 2015, did you purport to

18   have a newer BMW?

19        A     Say that again.

20        Q     Did you have a BMW at any point in 2015?

21        A     That was again a rental.

22        Q     And both of these were 30 days rental?

23        A     Yes, they were.

24        Q     And up until, I guess, late 2015 or early this

25   year, you had some limited liability companies, is that

```
 1   right, that you were involved with?

 2        A     That is correct.

 3        Q     Have all those companies been cancelled or --

 4        A     They have been dissolved.

 5        Q     Okay.  Did you have a lawyer assist you when

 6   you dissolved them?

 7        A     I did not.

 8        Q     You just filed the paperwork with the state?

 9        A     Correct.

10        Q     Were there any formal resolutions --

11        A     I'm still waiting for the paperwork from the

12   state.

13        Q     Sorry.  Not the state paperwork.  The members

14   of the LLC, did they sign anything saying that --

15        A     I'm the only member.

16        Q     Did they have any assets at the time they were

17   dissolved?

18        A     They were -- one of them was with the horses,

19   which I turned over to the bankruptcy.

20        Q     Which one was it?

21              THE TRUSTEE:  It's -- (inaudible).

22              THE DEBTOR:  Huh?

23              THE TRUSTEE:  I'm sorry.  You go ahead.  I'm

24   trying to multitask.

25   / / /
```

1  BY MR. ROBINSON:

2      Q     Which LLC was it that owned the horses?

3      A     Jens Frederick Larsen and Larsen Investment.

4      Q     And that was all the horses that are listed in

5  the schedules?

6      A     That's correct.

7      Q     And I suppose at the end of those LLCs, you

8  transferred the horses to yourself personally?

9      A     I do not own any of the horses.

10     Q     You don't own any of the horses?

11     A     No, I do not.

12           THE TRUSTEE:   Who owns the horses?

13           THE DEBTOR:   They were in a corporation.

14           THE TRUSTEE:   Why are they listed in your

15  bankruptcy schedules?

16           THE DEBTOR:   They're just assets that -- so I

17  turned them over to -- the papers.

18           THE TRUSTEE:   I'm easily confused here.

19  You're supposed to list in your bankruptcy schedules

20  property that you own.

21           So are you telling me now that you do not own

22  these horses?

23           THE DEBTOR:   I'm the member of the LLC that's

24  the owner of the horses.

25           THE TRUSTEE:   Well, it doesn't say they're

```
 1    owned by an LLC.  And what you should have said in the
 2    schedules is that you are a member of an LLC and then
 3    put the value of the LLC.
 4              How many LLCs are there?
 5              THE DEBTOR:  Three.
 6              THE TRUSTEE:  And so I take it that one or
 7    more of them own --
 8              THE DEBTOR:  Two of them own part of the
 9    racehorses.
10              THE TRUSTEE:  All right.  So I need the
11    management agreements for all three LLCs.  Are you the
12    managing member for --
13              THE DEBTOR:  I'm the only member.
14              THE TRUSTEE:  The only member for all three
15    LLCs.  Okay.  Yeah.  I need the documents relating to
16    all three LLCs --
17              THE DEBTOR:  Okay.
18              THE TRUSTEE:  -- as well.
19              Mr. Robinson, any other questions?
20              MR. ROBINSON:  If we're going to continue,
21    I'll just ask at the next conference, if that's okay.
22              THE TRUSTEE:  Yeah, because we'll need to take
23    a look at those documents, so I am going to continue
24    this to the 16th of September, time to be specified in
25    the notice.  In the interim, I'd like to get those
```

1    documents as quickly as possible.

2          MR. KIMMEL:  September 16th?

3          THE TRUSTEE:  I said September 16th, time to

4    be specified in the notice of continuance.

5          MR. KIMMEL:  Do we already have a hearing on

6    that date?

7          MR. ROBINSON:  Not positive if there's another

8    hearing.  I don't think so.  We're trying to set up a

9    2004 exam.

10          MR. KIMMEL:  On the 16th?

11          MR. ROBINSON:  We can trail it after this.

12          THE TRUSTEE:  I'm sorry.  Who is your client

13    again, Mr. Robinson?

14          MR. ROBINSON:  Jacquelynn Perske.

15          THE TRUSTEE:  I'm looking to see where she is

16    listed.

17          MR. ROBINSON:  I think it's at the end of the

18    schedule creditors.

19          THE TRUSTEE:  What's the nature of the claim?

20          MR. ROBINSON:  She was involved in two

21    businesses with Mr. Larsen, loaned a significant amount

22    of money into the business.

23          THE TRUSTEE:  Okay.  Very well.  Matter stands

24    continued to September 16th.  Thank you.

25

1            (Whereupon, the proceedings

2               were concluded.)

3                 -o0o-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  State of California          )
                                )ss
2  County of Los Angeles        )

3

4          I, ARIELA PASTEL, Certified Shorthand Reporter,

5  Certificate Number 13167, for the State of California,

6  hereby certify:

7          The foregoing proceedings were audio recorded

8  and then transcribed by me;

9          The foregoing transcript is a true and correct

10  transcript of my shorthand notes so taken;

11          I further certify that I am neither counsel for

12  nor related to any party to said action, nor in any way

13  interested in the outcome thereof.

14          IN WITNESS WHEREOF, I have hereunto subscribed

15  my name this 6th day of June, 2017.

16

17

18  _____

19

20

21

22

23

24

25

**Exhibit B**

1                UNITED STATES BANKRUPTCY COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                   LOS ANGELES DIVISION

4

5     In Re:                        )
                                    )
6     JENS F. LARSEN, an individual, ) Case No. 2:16
                                    ) bk-18600-RK
7            Debtor,                 )
      _____)
8                                   )
      JACQUELYNN PERSKE,            )
9                                   )
             Plaintiff              )
10                                  )
                  v.                )
11                                  )
      JENS F. LARSEN, an individual, )
12                                  )
             Defendant.             )
13    _____)

14

15

          VIDEOTAPED DEPOSITION OF JENS LARSEN
16
                       VOLUME I
17

18

19    Date and Time:  Friday, March 31, 2017
                      10:29 a.m. - 4:34 p.m.
20

21    Location:       6310 San Vicente Boulevard
                      Suite 430
22                    Los Angeles, California

23

24    Reporter:       Ariela Pastel, CSR
                      Certificate No. 13167

25

1                    The videotaped deposition of Jens

2    Larsen, Volume I, taken on behalf of the

3    Plaintiff, before Ariela Pastel, CSR, a Certified

4    Shorthand Reporter for the State of California,

5    commencing on Friday, March 31, 2017, at 10:29

6    a.m., at 6310 San Vicente Boulevard, Suite 430,

7    Los Angeles, California.

8

9    APPEARANCES OF COUNSEL:

10

11   For the Plaintiff:

12            VAN VLECK ZALLER & ROBINSON, LLP
              BY:  DAMION D.D. ROBINSON, ESQ.
13            6310 San Vicente Boulevard
              Suite 430
14            Los Angeles, California 90048
              310.592.3505
15            drobinson@vtzlaw.com

16

17   For the Defendant:

18            LAW OFFICES OF RAPEL & KELLENER
              BY:  JOSEPH W. KELLENER, ESQ.
19            14545 Friar Street
              Suite 100
20            Van Nuys, California 91411
              818.901.8600
21            joe@rkattys.com

22

23   ALSO PRESENT:

24            KIMBERLEE DECKER, VIDEOGRAPHER

25            STUART KLUFT

| 10:34:15 | 1 | work in 2014? |
|---|---|---|

10:34:17    2          A.    In 2014 I was taking care of my

10:34:20    3    father due to his illness.

10:34:21    4          Q.    I see.  And so aside from the

10:34:24    5    writing that you were getting into, in 2014 you

10:34:28    6    didn't have a job?

10:34:28    7          A.    No.

10:34:29    8          Q.    Were you involved in the 2014 time

10:34:35    9    frame in buying and selling horses?

10:34:37    10          A.    I was -- I did own racehorses.

10:34:46    11          Q.    And the racehorses you owned, were

10:34:50    12    you buying and selling them, or were you racing

10:34:53    13    them or both?

10:34:54    14          A.    Just racing and breeding.

10:34:57    15          Q.    How long had you been doing that?

10:35:05    16          A.    I got involved in 2008.

10:35:15    17          Q.    Between 2008 and 2014, did you race

10:35:20    18    and breed horses consistently?

10:35:22    19          A.    Yes.

10:35:22    20          Q.    Did you have any other occupation

10:35:25    21    during that time frame?

10:35:27    22          A.    I was my mother's caregiver from

10:35:28    23    2009 until the day she passed away.

10:35:31    24          Q.    And when was that?

10:35:32    25          A.    May 4th, 2012.

| | | |
|---|---|---|
| 10:35:36 | 1 | Q.    And then in the time frame from |
| 10:35:40 | 2 | May 2012 to 2014, did you have any other |
| 10:35:44 | 3 | occupation aside from horse racing and breeding? |
| 10:35:46 | 4 | A.    Just the horse breeding. |
| 10:35:48 | 5 | Q.    And during that time -- |
| 10:35:50 | 6 | A.    And a caregiver for my father. |
| 10:35:53 | 7 | Q.    And during that time frame, from |
| 10:35:56 | 8 | May 2012 up through 2014, was the horse racing and |
| 10:36:01 | 9 | breeding your occupation? |
| 10:36:02 | 10 | A.    It was a source of income. |
| 10:36:04 | 11 | Q.    Did you have any other source of |
| 10:36:06 | 12 | income during that time? |
| 10:36:08 | 13 | A.    No. |
| 10:36:08 | 14 | Q.    You mentioned before writing |
| 10:36:21 | 15 | starting in November -- I don't think you said |
| 10:36:26 | 16 | November.  You mentioned writing starting end of |
| 10:36:28 | 17 | 2014, early 2015. |
| 10:36:31 | 18 | At any point in time, did you make |
| 10:36:32 | 19 | any income from your writing? |
| 10:36:34 | 20 | A.    No. |
| 10:36:35 | 21 | Q.    Did you ever sell a script to |
| 10:36:36 | 22 | anybody? |
| 10:36:37 | 23 | A.    No. |
| 10:36:37 | 24 | Q.    Did you ever produce any films of |
| 10:36:42 | 25 | any kind? |

| | | |
|---|---|---|
| 10:56:21 | 1 | A.    Yes. |
| 10:56:23 | 2 | Q.    About how many times have you been |
| 10:56:26 | 3 | sued? |
| 10:56:26 | 4 | A.    I can't recall. |
| 10:56:30 | 5 | Q.    Multiple times; right? |
| 10:56:32 | 6 | A.    If multiple is two. |
| 10:56:32 | 7 | (Whereupon, Plaintiff's Exhibit Number |
| 10:56:32 | 8 | 4 was marked for identification by |
| 10:56:32 | 9 | the deposition officer and is attached |
| 10:56:32 | 10 | hereto.) |
| 10:56:45 | 11 | BY MR. ROBINSON: |
| 10:56:45 | 12 | Q.    I'll go ahead and hand you what |
| 10:56:47 | 13 | we'll mark as Exhibit 4. |
| 10:57:17 | 14 | Do you recognize Exhibit 4? |
| 10:57:21 | 15 | A.    I have not seen this before. |
| 10:57:23 | 16 | Q.    Do you have an understanding of |
| 10:57:28 | 17 | what Exhibit 4 is? |
| 10:57:29 | 18 | A.    I don't understand it.  I mean, I |
| 10:57:34 | 19 | can give a guess. |
| 10:57:37 | 20 | Q.    So have you ever seen your |
| 10:57:42 | 21 | bankruptcy petition before? |
| 10:57:44 | 22 | A.    I've never gone over it, no. |
| 10:57:47 | 23 | Q.    Okay.  So at no point in your |
| 10:57:52 | 24 | bankruptcy case have you gone over the bankruptcy |
| 10:57:55 | 25 | petition that was filed on your behalf? |

| | | |
|---|---|---|
| 10:58:00 | 1 | A.    No. |
| 10:58:00 | 2 | Q.    Never read it? |
| 10:58:01 | 3 | A.    No. |
| 10:58:04 | 4 | Q.    Did you sign it? |
| 10:58:05 | 5 | A.    I did sign electrical -- electric |

10:58:10   6   thing to file it.

10:58:13   7        Q.    So you signed the electric thing to

10:58:16   8   file it without having looked at the petition that

10:58:19   9   was being filed?

10:58:21  10        A.    The lawyer -- that's why he's no

10:58:24  11   longer my attorney for the bankruptcy.  He didn't

10:58:26  12   do anything correctly.  And this is the first time

10:58:27  13   I ever filed bankruptcy.  I didn't know.

10:58:34  14        Q.    Just so the record is clear, the

10:58:37  15   bankruptcy petition that's filed on your behalf,

10:58:37  16   you've never seen it before today?

10:58:40  17        A.    Not this.  I have not seen this

10:58:42  18   document until right now you put it in front of

10:58:44  19   me.

10:58:44  20        Q.    Okay.  Have you seen a document

10:58:47  21   that you understood to be your bankruptcy petition

10:58:50  22   before today?

10:58:50  23        A.    It was, like, two pages.

10:58:56  24        Q.    What were the two pages?

10:58:58  25        A.    Creditors.

| | | |
|---|---|---|
| 11:32:04 | 1 | Q. Were the horses owned by you, or |
| 11:32:04 | 2 | were they owned by business entities? |
| 11:32:04 | 3 | A. Entities. |
| 11:32:04 | 4 | Q. Which entities? |
| 11:32:04 | 5 | A. I had Larsen Investment Group, Jens |
| 11:32:04 | 6 | F. Larsen, LLC, and Abbrie Thoroughbreds. |
| 11:32:04 | 7 | DEPOSITION OFFICER:  And what |
| 11:32:04 | 8 | thoroughbreds? |
| 11:32:04 | 9 | THE DEPONENT:  Abbrie, A-b-b-r-i-e. |
| 11:32:29 | 10 | BY MR. ROBINSON: |
| 11:32:29 | 11 | Q. And in any of those three |
| 11:32:29 | 12 | companies, did you have any other members, |
| 11:32:29 | 13 | investors, partners, anything like that? |
| 11:32:43 | 14 | A. Abbrie Thoroughbreds.  I did have |
| 11:32:43 | 15 | one partner, a member on the -- |
| 11:32:43 | 16 | Q. Who was that member? |
| 11:32:43 | 17 | A. Amanda Kobrick, K-o-b-r-i-c-k. |
| 11:32:53 | 18 | Q. Were you the manager of Abbrie |
| 11:32:56 | 19 | Thoroughbreds? |
| 11:32:57 | 20 | A. We both were managers.  She was |
| 11:33:00 | 21 | the -- I believe the member, and I was the |
| 11:33:05 | 22 | manager.  I think that's how it was set up. |
| 11:33:07 | 23 | Q. Did she invest money in Abbrie |
| 11:33:09 | 24 | Thoroughbreds? |
| 11:33:10 | 25 | A. We both did, yes. |

| 11:34:40 | 1 | *A.*    No.   Yeah, I've listed everything, |
| 11:34:47 | 2 | yeah. |
| 11:34:47 | 3 | *Q.*    So it's Larsen Investment Group, |
| 11:34:49 | 4 | Jens F. Larsen -- |
| 11:34:51 | 5 | *A.*    -- LLC, Abbrie Thoroughbreds. |
| 11:34:53 | 6 | *Q.*    -- and Frederick Investments? |
| 11:34:53 | 7 | *A.*    Correct. |
| 11:34:58 | 8 | *Q.*    And those are all of them in the |
| 11:34:58 | 9 | past five years? |
| 11:34:58 | 10 | *A.*    Yes. |
| 11:34:58 | 11 | *Q.*    What horses did Larsen Investment |
| 11:35:04 | 12 | Group own? |
| 11:35:04 | 13 | *A.*    At the end, they owned everything; |
| 11:35:12 | 14 | Congo King, Now Na Tiz (phonetic spelling), Tiz a |
| 11:35:13 | 15 | Dream, Tinner's Time, Sheila's Gal, Clover Gal, |
| 11:35:24 | 16 | Formally Yours.  I mean, there's -- I had many |
| 11:35:27 | 17 | horses at one time.  I can't recall all the names. |
| 11:35:31 | 18 | *Q.*    Okay.  Let me step back a second. |
| 11:35:33 | 19 | Did you have any other members, |
| 11:35:33 | 20 | managers, or partners in Larsen Investment Group? |
| 11:35:37 | 21 | *A.*    No. |
| 11:35:37 | 22 | *Q.*    You were the only person involved |
| 11:35:42 | 23 | in that company? |
| 11:35:42 | 24 | *A.*    Correct. |
| 11:35:42 | 25 | *Q.*    And what about Jens F. Larsen, LLC, |

| 11:35:47 | 1 | what -- |
| 11:35:47 | 2 | A.    I was the only one. |
| 11:35:47 | 3 | Q.    Okay.  What about Frederick |
| 11:35:47 | 4 | Investments? |
| 11:35:47 | 5 | A.    I was the only one.  I was going to |
| 11:35:56 | 6 | add Jackie on to that, but then everything went |
| 11:35:56 | 7 | awry. |
| 11:35:56 | 8 | Q.    And you said before that, at the |
| 11:35:56 | 9 | end, Larsen Investment Group owned all the horses; |
| 11:36:07 | 10 | is that accurate? |
| 11:36:07 | 11 | A.    Yes. |
| 11:36:07 | 12 | Q.    When did Larsen Investment Group |
| 11:36:07 | 13 | own all the horses? |
| 11:36:07 | 14 | A.    The last year I was racing was in |
| 11:36:07 | 15 | 2015.  Everything was sent up to the farms.  I was |
| 11:36:21 | 16 | going to -- I was downsizing because I couldn't |
| 11:36:21 | 17 | afford it. |
| 11:36:30 | 18 | Q.    And you eventually dissolved Larsen |
| 11:36:33 | 19 | Investment Group; is that right? |
| 11:36:33 | 20 | A.    Correct. |
| 11:36:35 | 21 | Q.    When you dissolved that company, |
| 11:36:38 | 22 | how many horses did it own? |
| 11:36:38 | 23 | A.    I can't recall.  If I had to guess, |
| 11:36:47 | 24 | it would be 10 to 12.  I'm not sure due to I don't |
| 11:36:51 | 25 | know what foals were born.  I mean, it could have |

| | | |
|---|---|---|
| 11:36:56 | 1 | went from six horses up to 12 horses overnight. |
| 11:37:00 | 2 | Q. Sure. |
| 11:37:02 | 3 | A. So I'm not -- I can't give you an |
| 11:37:02 | 4 | accurate number. |
| 11:37:07 | 5 | Q. When did you dissolve Larsen |
| 11:37:07 | 6 | Investment Group? |
| 11:37:07 | 7 | A. That was early -- I did them all |
| 11:37:12 | 8 | early 2016. I think I sent the paperwork late |
| 11:37:12 | 9 | 2015, early 2016. |
| 11:37:20 | 10 | Q. And when you dissolved Larsen |
| 11:37:20 | 11 | Investment Group, you did that by -- strike that. |
| 11:37:26 | 12 | Let me step back. |
| 11:37:26 | 13 | Larsen Investment Group was an LLC; |
| 11:37:26 | 14 | correct? |
| 11:37:26 | 15 | (The deponent nodded.) |
| 11:37:32 | 16 | BY MR. ROBINSON: |
| 11:37:32 | 17 | Q. Okay. And when you dissolved it, |
| 11:37:32 | 18 | you sent paperwork in to the Secretary of State? |
| 11:37:32 | 19 | A. Correct. |
| 11:37:32 | 20 | Q. Okay. Did you do anything else in |
| 11:37:43 | 21 | connection with dissolving the company? |
| 11:37:43 | 22 | A. No. Just filing it, like you have |
| 11:37:43 | 23 | to, in the newspaper. |
| 11:37:43 | 24 | Q. You filed it in the newspaper? |
| 11:37:43 | 25 | A. Yeah. |

| | | |
|---|---|---|
| 12:59:28 | 1 | Q.    Did you also dissolve Jens |
| 12:59:30 | 2 | Frederick Larsen, LLC at that time? |
| 12:59:34 | 3 | A.    Correct. |
| 12:59:34 | 4 | Q.    Did you file paperwork with the |
| 12:59:36 | 5 | Secretary of State? |
| 12:59:36 | 6 | A.    Of Arizona, yes. |
| 12:59:38 | 7 | Q.    Did you give notice to any of your |
| 12:59:41 | 8 | creditors of that company? |
| 12:59:42 | 9 | A.    I had no creditors. |
| 12:59:45 | 10 | Q.    So when you dissolved Jens |
| 12:59:47 | 11 | Frederick Larsen, LLC, it had no creditors? |
| 12:59:51 | 12 | A.    I owed no money to anyone. |
| 12:59:54 | 13 | Q.    And did you publish the notice of |
| 12:59:57 | 14 | dissolution? |
| 12:59:57 | 15 | A.    Arizona, I don't think you have to |
| 12:59:59 | 16 | do that.  You just have to file the paperwork with |
| 13:00:01 | 17 | them. |
| 13:00:01 | 18 | Q.    At some point, did Jens Frederick |
| 13:00:07 | 19 | Larsen, LLC own horses? |
| 13:00:10 | 20 | A.    Jens F. Larsen, LLC is what it is. |
| 13:00:13 | 21 | Q.    I see.  So let me stop you there |
| 13:00:15 | 22 | for a second.  So the entity -- the formal entity |
| 13:00:17 | 23 | name is Jens F. Larsen, LLC? |
| 13:00:22 | 24 | A.    Correct. |
| 13:00:22 | 25 | Q.    Have you ever had an entity called |

13:00:22   1   Jens Frederick Larsen, LLC?

13:00:25   2              A.   No.   I believe it was Jens F.

13:00:28   3   Larsen, LLC.

13:00:30   4              Q.   And did that entity ever own any

13:00:32   5   horses?

13:00:33   6              A.   Yeah.   In the past, yes.

13:00:34   7              Q.   When was the last time that entity

13:00:37   8   owned horses?

13:00:38   9              A.   2012, '13.

13:00:43   10             Q.   And did you dissolve the entity

13:00:44   11  Frederick Investments, LLC?

13:00:46   12             A.   Correct, yes.

13:00:47   13             Q.   When did you dissolve that company?

13:00:48   14             A.   The same time as Larsen Investment

13:00:51   15  Group.

13:00:51   16             Q.   End of 2015, early 2016?

13:00:53   17             A.   Correct.

13:00:54   18             Q.   Did you give notice to any

13:00:55   19  creditors of Frederick Investment?

13:00:57   20             A.   The same as I did, through the

13:01:01   21  newspaper.

13:01:01   22             Q.   I see.   So you didn't mail notice

13:01:03   23  to anyone?

13:01:03   24             A.   No.

13:01:04   25             Q.   But you caused the notice of

13:19:15    1          A.     No.   I mean, the smoke shop with

13:19:21    2    Jackie, but that was under Frederick Investments.

13:19:24    3          Q.     Did you file any paperwork with the

13:19:26    4    Secretary of State to form any kind of legal

13:19:29    5    entity in 2015?

13:19:30    6          A.     For LLC, no.   Just -- no.

13:19:33    7          Q.     And what about in 2016, did you

13:19:36    8    file any paperwork to start a legal entity of any

13:19:38    9    kind?

13:19:39   10          A.     A legal entity, no.

13:19:41   11          Q.     What about a corporation?

13:19:45   12          A.     No.   I was entering bankruptcy.   I

13:19:48   13    wasn't doing anything.

13:19:53   14          Q.     And if I could have you turn to

13:19:56   15    Page 13 of your schedules and carrying over to

13:20:06   16    Page 14, on Items 6 through 14, it asks about

13:20:10   17    household items, things like that.

13:20:13   18                 I assume, at the time you filed for

13:20:16   19    bankruptcy, you had some clothes, furniture,

13:20:19   20    things of that nature?

13:20:21   21          A.     Of course.

13:20:22   22          Q.     So this is just not accurate;

13:20:25   23    right?

13:20:25   24          A.     I obviously have a cell phone.   I

13:20:32   25    don't have any antiques, no pistols.   I have no

13:20:40   1   furniture.

13:20:43   2           Q.    Did you have any jewelry at the

13:20:46   3   time you filed for bankruptcy?

13:20:47   4           A.    I don't wear jewelry, no.

13:20:48   5           Q.    At some point, I think I saw in

13:20:51   6   text messages that you were offering to give

13:20:53   7   Jackie a bracelet, a 1500-dollar bracelet.

13:20:56   8           A.    Yeah.  I bought her a -- no, I

13:20:58   9   didn't give it.  I bought her as a gift.

13:21:00   10          Q.    Oh, I see.  Okay.

13:21:01   11          A.    And then she wanted me to take it

13:21:03   12   back to get it resized.  And then I don't know

13:21:09   13   what she did with it.  She took it to go get

13:21:12   14   resized.

13:21:13   15               I gave that to her at -- it was

13:21:15   16   actually at Boa's Steakhouse.  I remember the

13:21:20   17   night very clearly.

13:21:24   18          Q.    Going on, on Page 14, it lists some

13:21:28   19   bank accounts here.

13:21:30   20               Do you see that?

13:21:30   21          A.    Yes.  On the bottom?

13:21:33   22          Q.    Yeah.  So 14 carrying over to 15.

13:21:38   23          A.    Yep.

13:21:38   24          Q.    Were those bank accounts that were

13:21:44   25   owned either by you or your business entities?

**Exhibit C**



**Secretary of State**
**Certificate of Cancellation**
**Limited Liability Company (LLC)**

LLC-4/7

---

IMPORTANT — Read Instructions before completing this form.

There is no Fee for filing a Certificate of Cancellation

Copy Fees - First page $1.00 & .50 for each attachment page
Certification Fee - $5.00

**FILED** LKA
Secretary of State
State of California

JUL 1 1 2016

This Space For Office Use Only

---

1. **Limited Liability Company Name** (Enter the exact name of the LLC as it is recorded with the Secretary of State)

Larsen Investment Group LLC

2. **12-Digit Secretary of State File Number**

201407310197

---

3. **Dissolution** (California LLCs ONLY: Check the box if the vote to dissolve was made by the vote of **ALL** the members.)

[✓] The dissolution was made by a vote of **ALL** of the members of the California Limited Liability Company.

**Note**: If the above box is not checked, a **Certificate of Dissolution** (Form LLC-3) must be filed prior to or together with this Certificate of Cancellation. (California Corporations Code section 17707.08(a).)

4. **Tax Liability Statement** (Do not alter Tax Liability Statement)

All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

5. **Cancellation Statement** (Do not alter Cancellation Statement)

Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

6. **Read and Sign Below** (See Instructions for Signature Requirements)

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| Signature | Jens Larsen |
| --- | --- |
| | Type or Print Name |
| Signature | Type or Print Name |
| Signature | Type or Print Name |

---

LLC-4/7 (REV 06/2016)
**Pl. 0176**

2016 California Secretary of State
www.sos.ca.gov/business/be

| | Secretary of State<br>**Certificate of Dissolution**<br>**Limited Liability Company (LLC)**<br>California LLC ONLY | LLC-3 |
|---|---|---|

**IMPORTANT — Read Instructions before completing this form.**

No **Fee** for filing a Certificate of Dissolution

Copy Fees - First page $1.00 & .50 for each attachment page
Certification Fee - $5.00

**FILED** LKA
Secretary of State
State of California
**JUL 1 1 2016**

Space For Office Use Only

| 1. Limited Liability Company Name (Enter the exact name of the LLC as it is recorded with the Secretary of State)<br><br>Larsen Investment Group LLC | 2. 12-Digit Secretary of State File Number<br><br>201407310197 |
|---|---|

3. **Dissolution** (Check the appropriate box. This Form LLC-3 is not required when the vote to dissolve was made by all of the members and that fact is noted on the Certificate of Cancellation (Form LLC-4/7).)

The dissolution of this LLC was caused by one of the following circumstances (**check one**):

[✓] The happening of an event as set forth in the Articles of Organization or in the LLC's written Operating Agreement.

[ ] The vote of a majority of the members of the LLC or a greater percentage of the voting interests of members as specified in the Articles of Organization or written Operating Agreement.

[ ] The passage of 90 consecutive days during which the LLC has no members, except on the death of a natural person who is the sole member of the LLC, the status of the member, including a membership interest, may pass to the heirs, successors and assigns of the member by will or applicable law.

[ ] The entry of a decree of judicial dissolution pursuant to California Corporations Code section 17707.03.

The Certificate of Dissolution puts all on notice that the LLC has elected to wind up the business of the LLC and is in the process of paying liabilities and distributing assets. In order to terminate the LLC, the LLC also **must file a Certificate of Cancellation (Form LLC-4/7)**.

4. **Read and Sign Below (See Instructions for Signature Requirements)**

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| Signature | Jens Larsen<br>Type or Print Name |
|---|---|
| Signature | Type or Print Name |

LLC-3 (REV 06/2016)

2016 California Secretary of State
www.sos.ca.gov/business/be

**PI. 0177**

**Exhibit D**

| Certificate of Dissolution | |
|---|---|
| **Certificate of Dissolution**<br>**Limited Liability Company (LLC)**<br>California LLC ONLY | **LLC-3** |

<table>
<tr>
<td colspan="2">

**IMPORTANT — Read instructions before completing this form.**

No **Fee** for filing a Certificate of Dissolution

Copy Fees - First page $1.00 & .50 for each attachment page
Certification Fee - $5.00
</td>
<td>

**FILED** L✓A
Secretary of State
State of California

JUL 1 1 2016
</td>
</tr>
</table>

Space For Office Use Only

| 1. Limited Liability Company Name (Enter the exact name of the LLC as it is recorded with the Secretary of State)<br><br>Frederick Investments LLC | 2. 12-Digit Secretary of State File Number<br><br>2015 2381 0112 |
|---|---|

3. **Dissolution** (Check the appropriate box. This Form LLC-3 is not required when the vote to dissolve was made by all of the members and that fact is noted on the Certificate of Cancellation (Form LLC-4/7).)

The dissolution of this LLC was caused by one of the following circumstances (**check one**):

[✓] The happening of an event as set forth in the Articles of Organization or in the LLC's written Operating Agreement.

[ ] The vote of a majority of the members of the LLC or a greater percentage of the voting interests of members as specified in the Articles of Organization or written Operating Agreement.

[ ] The passage of 90 consecutive days during which the LLC has no members, except on the death of a natural person who is the sole member of the LLC, the status of the member, including a membership interest, may pass to the heirs, successors and assigns of the member by will or applicable law.

[ ] The entry of a decree of judicial dissolution pursuant to California Corporations Code section 17707.03.

The Certificate of Dissolution puts all on notice that the LLC has elected to wind up the business of the LLC and is in the process of paying liabilities and distributing assets. In order to terminate the LLC, the LLC also **must file a Certificate of Cancellation (Form LLC-4/7).**

4. **Read and Sign Below (See Instructions for Signature Requirements)**

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| | Jens Larsen |
|---|---|
| Signature | Type or Print Name |
| | |
| Signature | Type or Print Name |

LLC-3 (REV 06/2016)

2016 California Secretary of State
www.sos.ca.gov/business/be

Pl. 0174



**Secretary of State**
**Certificate of Cancellation**
**Limited Liability Company (LLC)**

**LLC-4/7**

**FILED** ᴜᴸᴬ
Secretary of State
State of California
**JUL 1 1 2016**

IMPORTANT — Read Instructions before completing this form.

There is **no Fee** for filing a Certificate of Cancellation

Copy Fees - First page $1.00 & .50 for each attachment page
Certification Fee - $5.00

*This Space For Office Use Only*

| 1. Limited Liability Company Name (Enter the exact name of the LLC as it is recorded with the Secretary of State) | 2. 12-Digit Secretary of State File Number |
|---|---|
| Frederick Investments LLC | 201523810112 |

3. **Dissolution** (California LLCs ONLY: Check the box if the vote to dissolve was made by the vote of **ALL** the members.)

☑ The dissolution was made by a vote of **ALL** of the members of the California Limited Liability Company.

**Note**: If the above box is not checked, a **Certificate of Dissolution** (Form LLC-3) must be filed prior to or together with this Certificate of Cancellation. (California Corporations Code section 17707.08(a).)

4. **Tax Liability Statement** (Do not alter Tax Liability Statement)

All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

5. **Cancellation Statement** (Do not alter Cancellation Statement)

Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

6. **Read and Sign Below** (See Instructions for Signature Requirements)

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| Signature | Jens Larsen |
|---|---|
|  | Type or Print Name |
| Signature | Type or Print Name |
| Signature | Type or Print Name |

**Pl. 0175**

**Exhibit E**



# STATE OF ARIZONA



### Office of the
## CORPORATION COMMISSION

### CERTIFICATE OF GOOD STANDING

*To all to whom these presents shall come, greeting:*

*I, Ted Vogt, Executive Director of the Arizona Corporation Commission, do hereby certify that*

### ***JENS FREDERICK LARSEN LLC***

*a domestic limited liability company organized under the laws of the State of Arizona, did organize on the 7th day of May 2013.*

*I further certify that according to the records of the Arizona Corporation Commission, as of the date set forth hereunder, the said limited liability company is not administratively dissolved for failure to comply with the provisions of A.R.S. section 29-601 et seq., the Arizona Limited Liability Company Act; and that the said limited liability company has not filed Articles of Termination as of the date of this certificate.*

*This certificate relates only to the legal existence of the above named entity as of the date issued. This certificate is not to be construed as an endorsement, recommendation, or notice of approval of the entity's condition or business activities and practices.*

*IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official seal of the Arizona Corporation Commission. Done at Phoenix, the Capital, this 12th day of June, 2017, A. D.*



Ted Vogt, Executive Director

By: ___1675799___

PI. 0178



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2049 Century Park East, Suite 2460, Los Angeles, California 90067

A true and correct copy of the foregoing document(s) entitled (*specify*):

**CREDITOR JACQUELYNN G. PERSKE'S NOTICE OF OBJECTION AND OBJECTION
TO EXEMPTIONS LISTED ON DEBTOR JENS LARSEN'S AMENDED SCHEDULE C [Dkt. No.
51]; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF DAMION ROBINSON IN SUPPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
September 20, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

*See Attached Service List.*

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) September 20, 2017, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert N. Kwan
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

*See Attached Service List*

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) #########, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Sept. 20, 2017 | Damion Robinson | s/ Damion Robinson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**In re JENS LARSEN**
**2:16-bk-18600-RK**

**<u>Service List</u>**

| Party | Address / Means of Service |
|-------|----------------------------|
| To the Court | <u>By Mail:</u><br>The Honorable Robert N. Kwan<br>United States Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Federal Building and<br>Courthouse<br>255 E. Temple Street, Suite 1682<br>Los Angeles, CA 90012 |
| To the Debtor | <u>By NEF (Electronic Delivery)</u><br>Matthew D Resnik<br>Simon Resnik Hayes LLP<br>510 W 6th St, Ste 1220<br>Los Angeles, CA 90014<br>Tel:  213-572-0800<br>Fax : 213-572-0860<br>Email: matt@srhlawfirm.com<br><br>Joseph W. Kellener<br>Kellener & Kellener, Law Offices<br>6315 Van Nuys Bvd, Ste A3<br>Van Nuys, CA 91401<br>Tel: 818.901.8600<br>Fax: 844.901.8601<br>Email: joe@kellenerlaw.com |
| To the Chapter 7 Trustee | <u>By NEF (Electronic Delivery)</u><br>Edward M Wolkowitz (TR)<br>Levene Neale Bender Yoo & Brill LLP<br>800 South Figueroa Street, Suite 1260<br>Los Angeles, CA 90017<br>Tel:  (310) 229-3367<br>Email:  emwtrustee@lnbrb.com;<br>ewolkowitz@ecf.epiqsystems.com<br><br>Carmela Pagay<br>Levene Neale Bender et al<br>10250 Constellation Bl Ste1700<br>Los Angeles, CA 90067 |

| | |
|---|---|
| | Tel: 310-229-1234<br>Fax : 310-229-1244<br>Email: ctp@lnbyb.com<br><br>Diane C Weil<br>Danning Gill Diamond & Kollitz LLP<br>1900 Avenue of the Stars 11th Fl<br>Los Angeles, CA 90067<br>310-277-0077<br>Fax : 310-277-5735<br>Email: dweil@dgdk.com |
| To the United States Trustee | <u>By NEF (Electronic Delivery)</u><br>915 Wilshire Blvd, Suite 1850<br>Los Angeles, CA 90017<br>Tel: (213) 894-6811<br>Email: ustpregion16.la.ecf@usdoj.gov |